Argued and submitted January 31, affirmed July 26, petition for review denied
November 28, 2017 (362 Or 208)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

WESLEY SCOTT GEYER,
*Defendant-Appellant.*

Josephine County Circuit Court
14CR0405; A160367

401 P3d 1259

Andy Simrin argued the cause for appellant. With him on the briefs was Andy Simrin PC.

Benjamin Gutman, Solicitor General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum,

Attorney General, and Susan G. Howe, Assistant Attorney General.

Before Ortega, Presiding Judge, and Egan, Judge, and Lagesen, Judge.

**LAGESEN, J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010. Defendant was charged with DUII after police officers Wallace and Anuschat found defendant asleep at the wheel of his Jeep with an open bottle of Coors Light in the cupholder. At the time (around 5:30 a.m.), the Jeep was stopped in the middle of the road and running. To address the situation, Wallace opened the driver's door as Anuschat opened the passenger-side door. Wallace attempted to rouse defendant, while Anuschat turned off the car. After defendant woke up, the officers, who believed that defendant had been driving under the influence, asked defendant to complete field sobriety tests (FSTs) and take a breath test. Defendant refused, but was charged with and convicted of DUII nonetheless. On appeal, defendant contends that the trial court erred by denying his pretrial motion to suppress. Defendant asserts that, by opening his car doors, officers engaged in an unlawful warrantless search in violation of Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution, such that the evidence discovered after that search had to be suppressed. We conclude that, under the circumstances of this case, defendant did not preserve the issue of whether the officers' conduct of opening the car doors was an unlawful search in violation of Article I, section 9, or the Fourth Amendment. We therefore affirm.

For purposes of this opinion, we draw the facts from Wallace's testimony at the hearing on the motion to suppress, which the trial court credited, and from the dashboard-camera video that was introduced into evidence at defendant's criminal trial.[1] To the extent that there are

---

[1] Ordinarily, on review of a trial court's ruling of a pretrial motion to suppress, we are confined to the record developed on the motion to suppress, and may not consider additional evidence developed at trial to assess the merits of the trial court's ruling. *State v. Pitt*, 352 Or 566, 575, 293 P3d 1002 (2012); *see also State v. Saunders*, 221 Or App 116, 188 P3d 449 (2008) (declining to review trial testimony on an appeal from a pretrial motion); *State v. Najibi*, 150 Or App 194, 199 n 4, 945 P2d 1093 (1997) (evidence presented at trial not reviewed in "determining the correctness of the *** pretrial ruling"). In this case, however, we do not reach the merits of the trial court's decision on the motion to suppress and think it appropriate in these circumstances to refer to the video so as to describe

discrepancies between Wallace's testimony at the hearing and the video, we draw the facts from the video.[2] At 5:28 a.m., Wallace responded to a call about a running vehicle parked in the middle of the roadway. As the dashboard-camera video reveals, when Wallace arrived at the scene, defendant's Jeep was situated as described by the caller, straddling the center line of the road. When Wallace approached the car to investigate, he noticed defendant asleep in the driver's seat and "an open Coor's Light bottle in the cupholder."[3] Wallace called for back up and, about five minutes later, Anuschat arrived.

Wallace then knocked on the Jeep's driver's side door. When defendant did not wake up, Wallace opened the door. At more or less the same time, Anuschat opened the vehicle's passenger-side door to reach in and turn the vehicle off. Wallace made a number of verbal attempts to wake defendant, but defendant was sleeping very heavily. Wallace then physically contacted defendant to wake him. All in all, it took several minutes for defendant to wake up, come to, and begin speaking with Wallace and Anuschat.

When defendant finally woke up and began talking, his speech was slurred and he had difficulty engaging in conversation. Defendant struggled to answer questions and had difficulties presenting Wallace with his vehicle registration and driver's license. Defendant's eyes were watery, and an odor of alcohol emanated from the car. Defendant

---

what transpired during Wallace and Anuschat's encounter with defendant. We do not mean to suggest a change in our view as to the scope of evidence that may be considered in reviewing the merits of a trial court's ruling on a pretrial motion to suppress.

[2] In most, if not all, instances in which Wallace's recollection of the stop deviates from the events captured in the video, Wallace qualified his testimony by indicating that he was not fully confident in his memory.

[3] In the motion hearing, Wallace testified that he was "not sure," when asked if he "didn't notice the can of beer in the car until after [he] opened the door[.]" He goes on to say, "I think I documented it * * * after I opened the door I believe when I started speaking with him is when I observed [the beer]." On Wallace's dash-cam video, however, Wallace can be heard remarking on the "open Coor's Light bottle in the cupholder" before the door is opened. In the written motion to suppress, defendant also noted that the "officer noticed an empty Coors light can in the cup holder" before a backup officer arrives; it is evident from the transcript of the hearing on the motion to suppress that the defense had reviewed the video, and the recitation of the facts in the written motion to suppress is consistent with the video.

admitted that he had been drinking and had trouble identifying his current location.

Wallace believed that defendant had driven under the influence of intoxicants and asked defendant to perform FSTs. Defendant refused. Wallace then arrested defendant for DUII. By that time, Officer Aguinaga had arrived to assist, and he transported defendant to the jail, where he requested that defendant take a breath test. Defendant again refused. Thereafter, he was charged with DUII.

Before trial, defendant filed a written motion to suppress. The written motion explained that defendant sought an order:

"(1)  suppressing the products of the warrantless search of defendant,

"(2)  suppressing defendant's assertion of his enumerated constitutional right to not consent to a warrantless search,

"(3)  suppressing defendant's refusal to perform field sobriety tests and

"(4)  suppressing defendant's refusal to submit to a search of his deep lung air and/or breath."

Elaborating on his theory of suppression, defendant argued that the FSTs and breath test to which Wallace and Aguinaga had requested him to submit both were unlawful warrantless searches, such that his refusal to consent to those ostensibly unlawful searches could not be admitted as evidence at his trial unless the state could prove that those warrantless searches were justified by probable cause and an exception to the warrant requirement:

"The administration of field sobriety tests is a search within the meaning of Article, I, section 9 and under the Fourth Amendment to the United States Constitution. The purpose of the NHTSA Standardized Field Sobriety tests is to provide to the administrator a measure of probable blood alcohol concentration in the driver's blood. The purpose of the warnings pursuant to ORS 813.135 and 813.136 is to *compel* drivers to take the field sobriety tests. * * *

"The United States Supreme Court has applied the Fourth Amendment to a 'breathalyzer' test, which generally requires the production of alveolar or 'deep lung'

breath for chemical analysis. Warrantless searches and seizures are *per se* unreasonable. The burden is upon the state to prove the legality of an unwarranted search and seizure. The state bears the burden of proving legality by a preponderance of evidence.

"The state can meet its burden in a variety of ways. For instance, if a defendant voluntarily consents, a search and seizure is legal. Likewise, if the state cannot prove probable cause and exigent circumstances justifying the failure to obtain a warrant, a search and seizure is legal.

"The dissipation of alcohol in a suspected drunk driver's blood does not alone constitute exigent circumstances."

(Internal quotation marks and citations omitted.) Defendant also argued that he had invoked his right to counsel once he was at the jail and that Aguinaga failed to honor that invocation, requiring suppression of certain statements that defendant made after invoking the right to counsel. He concluded his written motion by identifying the specific evidence he contended was subject to suppression as a result of the alleged constitutional violations:

"The defendant's failure to submit and/or refusal to submit to field sobriety tests and the breath Alcohol testing must be suppressed as evidence. Further, defendant's statement, post invocation of his right to counsel and right to remain [silent], should be suppressed. Once suppression is ordered, the state must redact the DVD to eliminate those portions of that electronic evidence."

Although the "Facts" section of defendant's motion to suppress noted that Wallace and Anuschat had opened defendant's car doors to turn off the car and wake defendant, defendant did not identify the opening of the car doors as a search or otherwise pinpoint that conduct as the source of any entitlement to the suppression of evidence.

The state's written response to defendant's motion addressed defendant's contentions that the requested FSTs and breath test constituted unlawful warrantless searches such that defendant's refusal to take those tests was subject to suppression, indicating the state's understanding that the alleged unlawful searches targeted by defendant's motion to suppress were the requested FSTs and breath

tests. At the outset of the hearing on the motion to suppress, the state repeated on the record its understanding of the scope of defendant's motion, noting additionally that defendant sought suppression of statements made after defendant invoked his right to counsel:

> "Just briefly we're here today for looking at the admissibility of refusal of a breath test and refusal of Field Sobriety tests. In alcohol related cases Oregon case law has laid out that as an exception to the warrant requirement when there's probable cause, and exigent circumstances, and I believe that's the main issue today.
>
> "I think the secondary issue is also anticipating Counsel to be arguing statements made after the Defendant invoked his right to Counsel. Statements should not be admissible. So I think those are the two main things."

Offered a chance to respond to the state's summary of the scope of the motion, defendant (through counsel) responded, "I have nothing to add."

Consistent with defendant's articulated theory of suppression, the bulk of the evidence developed at the hearing centered on the circumstances surrounding the requests that defendant submit to the FSTs and a breath test. The state's closing argument also focused on the constitutionality of the requests that defendant submit to the FSTs and breath test and did not address the constitutionality of the officers' opening of the car doors.

Defendant's closing argument briefly took a different turn. Only then, after the close of evidence, did defendant— for the first and only time below—address the lawfulness of Wallace and Anuschat's opening of defendant's car doors:

> "Opening the car door is a search. No probable cause. No basis to open the car door. No lawful basis to open the car door. No exception given or provided, or explanation as to the lawfulness of opening the car door.
>
> "Upon opening the car door the officer developed— received information causing him to believe that the person was drunk, that is the smell. That can of beer. There upon touching the Defendant, pushing the Defendant at least his colleague in attempt to arouse him, and seeing the reaction.

"And upon being tough to arouse the driver they formed an opinion based upon the odor, the can of beer, circumstances, * * *, somnolence that he was under the influence. All of that information was derived as a result of the unlawful search, opening the door.

"We don't go any further than that if the Court concludes there was no lawful authority to open the car door, and that there was no evidence or testimony provided to justify it. And there just—there's no testimony to justify the opening of the car door. The officer testified why he opened the car door, and it wasn't a justifiable reason."

Defendant then returned his focus to the issues raised in his written motion, arguing them at length. The state offered a brief rebuttal argument addressing the issues argued in the written motion but did not address the newly raised issue about the lawfulness of the officers' opening of the car doors.

The trial court took the matter under advisement and ultimately issued a letter opinion denying defendant's motion to suppress. Crediting the officers' testimony from the hearing, the court concluded that the requests that defendant submit to the FSTs and breath test were justified by probable cause and exigent circumstances. In its discussion of the facts, the court noted that the officers had opened the car doors "stating this was for safety reasons since the vehicle was running. They also considered the possibility of a medical situation."[4] However, the court did not address whether the officers conducted a lawful search when they opened the car doors in its letter opinion, and defendant did not ask the court to address the issue again.

On appeal, the sole issue raised by defendant is the one raised at the beginning of his closing argument: whether, by opening his car door, officers conducted an unlawful search that was not justified by any exception to the warrant requirement such that all evidence discovered after that search must be suppressed. The state argues, and

---

[4] The court's recollection of Wallace's testimony was not fully accurate. Wallace testified that the running car in the middle of the road was a safety hazard, but did not expressly state that he opened the car door because of safety reasons. As for whether defendant was suffering from a medical emergency, Wallace testified that it was possible, but that he did not think that there was a medical emergency when he opened the car door.

we agree, that defendant did not raise that issue below in a manner that preserved it for our review.

Preservation requires that an issue must first be presented to the trial court in order to be considered on appeal. *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008). Preservation "gives a trial court the chance to consider and rule on a contention[.]" *Id.*; *see Shields v. Campbell*, 277 Or 71, 77, 559 P2d 1275 (1977) ("A party owes the trial court the obligation of a sound, clear and articulate motion[.]"). "[P]rocedural fairness to the parties and to the trial court" serves as the touchstone of preservation. *Lampert*, 345 Or at 220. For this reason, "[e]xactly what suffices to preserve a particular argument 'is not something that can be explained by a neat verbal formula.'" *State v. Parnell*, 278 Or App 260, 265, 373 P3d 1252 (2016) (quoting *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011)). Rather, preservation is something that we must assess on the facts of each case, taking into account the animating principle of the rule: procedural fairness. "Ultimately, the preservation rule is a practical one, and close calls * * * inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the rule have been sufficiently served." *State v. Parkins*, 346 Or 333, 341, 211 P3d 262 (2009).

This is the sort of "close call" case to which the Supreme Court referred in *Parkins*. Ultimately, however, on this particular record, we conclude that the policies underlying the preservation rule were not met.

First, although defendant brought up the issue of whether opening the car doors was a search to the trial court, he did not do so in a way that gave the state a fair opportunity to address that issue. By waiting until after the close of evidence on the motion to suppress to suggest—for the first time—that he was challenging the officers' opening of the car doors, defendant deprived the state of the opportunity to develop the evidence on that question fully. Had the state known that the officers' decision to open the car doors would be at issue at the suppression hearing (which was held more than a week before trial), it could have introduced the dashboard camera video into evidence at the

suppression hearing instead of waiting until trial to introduce it. The tape tends to suggest that the officers' conduct was justified by several possible exceptions to the warrant requirement, more so than Wallace's testimony in light of the fact that Wallace's memory was fuzzy or inaccurate on some points. The state also would have been on notice of the possible need to call Anuschat to testify at the suppression hearing to address the safety concerns presented by defendant's running car and Anuschat's need to turn off the car, thereby developing an evidentiary record similar to the one in *State v. Rhodes*, 315 Or 191, 193, 843 P2d 927 (1992). In *Rhodes*, the Supreme Court concluded that an officer did not violate Article I, section 9, by opening the car door of a running car with a sleeping driver who was suspected of DUII, in light of the officer's articulated view that it can be unsafe to wake up a sleeping driver of a running car without first turning off the car. But, because defendant did not alert the state to his car-door theory before the close of evidence, the state was deprived of the opportunity to develop fully its case on the point.

Second, under the circumstances, defendant's presentation of the issue did not fairly apprise the trial court that defendant sought a ruling on the issue. Again, the issue was not raised in the written motion and, at the start of the hearing, defendant did not tell the court that he intended to raise the issue in addition to those summarized by the state, even though the trial court gave him the opportunity to supplement the state's recitation of the issues. And, although defendant's closing argument did clearly articulate the theory that he now advances on appeal, it was but a small part of a longer closing argument, and it is evident to us from the trial court's letter opinion that defendant's brief oral argument did not succeed in alerting the trial court that defendant was raising an issue outside of the scope of the issues identified in the written motion and at the start of the hearing. Furthermore, although defendant had plenty of time to secure a ruling on the issue ahead of trial, given that the trial court resolved defendant's motion to suppress by letter opinion ahead of trial, defendant never alerted the court that it had not addressed whether the car door opening was a lawful search. This presents a significant impediment to

appellate review because, on this record, it appears to us that the trial court never resolved the various factual issues that must be resolved in order to determine whether the opening of the car doors was an unlawful search, and even absent the video evidence and testimony from Anuschat, there is evidence that would permit competing inferences on those points.[5]

Under those circumstances, the issue that defendant now raises on appeal was not presented in a way that, as a procedural matter, afforded the state and the trial court a fair opportunity to address it. We therefore conclude that the issue is not preserved and affirm for that reason. In so concluding, we emphasize that we are not adopting a categorical rule as to what will or will not suffice to preserve an issue for appellate review. We simply are concluding that this case presents a "close call" and that the principles underlying the requirement of preservation were not met.

Affirmed.

---

[5] For example, it would not be unreasonable for a factfinder to infer from Wallace's testimony about Anuschat's conduct—that Anuschat opened the passenger-side door at the same time that Wallace opened the driver's side door and turned off the car—that Anuschat subjectively believed that circumstances of defendant sleeping at the wheel of a running car in the middle of the road presented the same sort of risk to which the officer in *Rhodes* testified, and which led the court to sustain the search at issue in that case.